JEROME v. CARBONATE NATIONAL BANK OF LEADVILLE.

1. **PAYMENT OF ANTECEDENT DEBT A VALUABLE CONSIDERATION.**
One who takes property in payment or security of a preëxisting debt is a purchaser for a valuable consideration.

2. **DEED—RECORD.**
An unrecorded deed does not take effect as against a subsequent purchaser or an attaching creditor without notice.

3. **NOTICE.**
Knowledge of such facts as ought to put a prudent man upon inquiry as to the title, charges a subsequent purchaser with notice of all facts pertaining thereto to which diligent inquiry and investigation would have led him.

4. **SAME—POSSESSION.**
Possession of real estate to operate as notice of the possessor's title as against subsequent purchasers must be inconsistent with the title of the apparent owner by the record.    The possession relied upon in this case to prove notice is held insufficient for that purpose.

5. **PLEADING—FACTS ADMITTED.**
A fact alleged in an answer and not denied in the replication stands admitted, and need not be established by proof.

*Appeal from the District Court of Arapahoe County.*

THIS is an action brought by Jerome against the Carbonate National Bank to quiet title to real estate.

On the 11th day of July, 1893, Richard Cline was the record owner of certain lots in Bohm's subdivision of the city of Denver, in Arapahoe county, Colorado.    Upon that day the appellee bank began suit in the district court of Lake county against said Richard Cline upon an overdue promissory note, and in aid thereof sued out a writ of attach-

ment, which, on the same day, it caused to be levied upon these lots.

On the 18th day of March, 1890, Cline had given to the appellant Jerome a warranty deed for the same property, which, for more than three years thereafter, was not recorded with the county clerk and recorder of Arapahoe county, and was not recorded until July 12, 1893, one day after the levy of the writ of attachment. This deed from Cline to Jerome, it seems, was executed in pursuance of a contract entered into between them in the year 1889; and it is alleged in the complaint that Jerome at once entered upon the premises under such contract of sale, and thereafter has continuously been in possession up to and until after the levy of the writ of attachment.

The acts of possession relied upon are as follows: In January, 1889, when the appellant contracted to buy the land, it was inclosed by a fence, was occupied by tenants of the former owner, and was used for market gardening. After the appellant got the option to purchase the property, he secured a relinquishment of the leases of the tenants, removed the fences from the land, and, with the owners of contiguous tracts, platted the same into lots and blocks, marking out the streets and alleys. Some parts of the land were hilly and rough, some low, and in September and October of 1889 Jerome employed a contractor, who, with fifteen or twenty teams, graded and leveled the surface of the lands, in places cutting it down from five to eight feet, and removed from eight to ten thousand yards of earth from one portion of the premises to another,—all at the cost of about sixteen hundred dollars. Thereafter, and before the levy of the writ of attachment, the new streets and alleys were again marked out, rounding the surface, plowing out gutters, and marking out the alleys. Some of these things were done before, some after, Jerome secured his deed, but all after his option to buy.

At various times appellant went upon the premises, alone, and in company with others to whom he was attempting to

sell the land. The property was assessed in his name from 1889 to the present time, and during such time he paid the taxes thereon. The appellant coöperated with owners of adjacent lands in constructing an electric road passing through the property, and in subscribing for a schoolhouse on adjacent property, and the erection of a church on the same ground; and joined contiguous owners in grading Mississippi street and University avenue, which adjoined the land in controversy. The land has remained vacant and unimproved since its conversion by the appellant from farm lands into suburban lots.

It appears, also, from the evidence, that whenever any of the lots were sold by the appellant,—some being sold before, some after, Cline delivered his deed to appellant,—deeds therefor were given by Richard Cline, the record owner, and when there were deferred payments on the purchase price, notes were given to Richard Cline as payee, and trust deeds to secure the payment of the same were given to John L. Jerome, as trustee, for the use and benefit of Richard Cline, and the same duly recorded. Mr. Jerome testifies that these deeds by Cline to the purchasers were given at his request and for his (Jerome's) own convenience, the title meanwhile standing upon the records in the name of Cline.

Other property than that in controversy was levied upon under the writ of attachment. This attachment was sustained, and judgment rendered against Cline in favor of the bank for the amount of the claim, and special execution for the sale of the attached property ordered. At the time of the trial there was no testimony that the judgment recovered by the bank against Cline was unsatisfied. The bank had no actual knowledge of the existence of this unrecorded deed, or of plaintiff's claim of ownership, unless it was constructively charged with notice thereof by reason of the alleged acts of ownership asserted by Jerome, and such as the alleged acts of possession on his part might furnish.

From the judgment of the lower court in favor of the bank, Jerome has brought his appeal to this court.

Mr. THOMAS H. HOOD, for appellant.

Mr. CHARLES CAVENDER, for appellee.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

The contest here is between one who claims under the lien of an attachment levy, and one who claims under a prior, but unrecorded, deed. The determination of these rights depends upon the meaning of the following section of our statute :

" All · deeds, conveyances, agreements in writing of, or affecting title to real estate or any interest therein, and powers of attorney for the conveyance of any real estate or any interest therein, may be recorded in the office of the recorder of the county wherein such real estate is situate, and from and after the filing thereof for record in such office and not before, such deeds, bonds, and agreements in writing shall take effect as to subsequent *bona fide* purchasers and incumbrancers by mortgage, judgment or otherwise not having notice thereof." 1 Mills' An. Stats., sec. 446.

Whatever the law may be in other jurisdictions, it is settled in this state that one who takes property in payment or security of a preëxisting debt is to be regarded as a purchaser. for a valuable consideration. *Knox v. McFarran*, 4 Colo. 586.

In the same case, in 5 Colo. 217, it was held that an unrecorded deed will· not take effect against a subsequent purchaser without notice.

It is also settled that one who takes a deed of land before a judgment is recovered against its owner, but fails to record his deed until after a sheriff's sale of the same land is made under such judgment, and until after the recording of the sheriff's certificate of sale, holds subject to the rights of the

purchaser at the sale without notice of the prior deed,—
such purchaser being the judgment creditor, the amount of
whose bid is credited on the judgment,—although the sheriff's
deed is recorded after the recording of the prior deed of the
owner. *McMurtrie v. Riddell*, 9 Colo. 497.

It is said, however, that the doctrine of these cases is
against the weight of authority in this country, and, for this
reason, we are asked not to extend such doctrine by logically
applying it to the facts of a case the same in principle, but
to restrict it to such cases only as are exactly similar in their
facts.

Applying this test, we are told that the case at bar presents
a state of facts different from that of either of the cases above
cited.   There the statute was interpreted so as to protect
*bona fide* purchasers, who were also judgment creditors, while
in the case at bar the one invoking the aid of the statute is
but an attaching creditor, whose rank is inferior to that of a
judgment creditor.

But we think the necessary and logical result of the doc-
trine announced makes the rights of the appellee here supe-
rior to those of the appellant for the following reason : An
attaching creditor belongs to that class of lienors described
in the statute as incumbrancers " otherwise " than by mort-
gage or judgment.

If we agrée with appellant that under the rule *noscitur a
sociis* such incumbrancers must be of the same general class
as those by judgment or mortgage, the application of this
rule will not exclude an attaching creditor.   The levy of the
writ certainly constitutes some kind of an incumbrance upon
the property, and, by the statute, the property so levied upon
is to be preserved during the pendency of the suit to answer,
and to be applied to, the satisfaction of whatever judgment
may be recovered, and can be destroyed only by dissolution
of the attachment or failure to recover judgment.   Code of
1887, sec. 108; Drake on Attachments (7th ed.), sec. 224,
*et seq.*

This incumbrance is of the same general class as an incum-

brance by judgment, and while the inchoate rights of the former may not possess the same qualities, or be attended with the same results, as the latter, they are the same in kind, and differ, if at all, only in degree, and become exactly the same by the subsequent recovery of a judgment, when the lien of the attachment becomes merged in the judgment, saving to the latter the priority of the former. It follows that the rights of an attaching creditor, under this statute, stand upon the same basis as those of a judgment creditor, and the latter being clearly within the purview of the statute, so, also, are the former.

Unless, therefore, the appellee had notice of appellant's claim of ownership, or what was equivalent to notice, the rights of the bank are superior. With respect to the character of possession which operates as notice of the rights of one claiming thereunder, it is said that "neither actual occupation, cultivation, or residence are necessary to constitute actual possession, when the property is so situated as not to admit of any permanent useful improvement, and the continued claim of the party has been evidenced by public acts of ownership, such as he would exercise over property which he claimed in his own right and would not exercise over property which he did not claim." *Ewing v. Burnet,* 11 Pet. 41; *Simmons Creek Coal Co. v. Doran,* 142 U. S. 417–442.

"It is a familiar principle of equity jurisprudence, that if one obtains a conveyance of property, with notice of an equity in relation thereto binding upon his grantor, he will also be bound." Only innocent purchasers, without notice, are protected. Actual notice, however, is not essential. If the subsequent purchaser "has knowledge of such facts as ought to put a prudent man upon inquiry as to the title, he is chargeable with notice of all facts pertaining thereto to which diligent inquiry and investigation would have led him." If reliance is had upon possession, it must be visible and exclusive and continuous, and not temporary or occasional. It may be evidenced, however, by any acts which clearly show

an appropriation of the property to the use of a person claiming the same. *Mason v. Mullahy*, 145 Ill. 383.

It has also been said that this possession must be inconsistent with the title of the apparent owner by the record. *Brown v. Volkening*, 64 N. Y. 76.

The purchaser is also held affected with notice of all that is patent on an examination of the premises he is about to buy, and is charged with whatever facts are in existence as to possession, and cannot be excused if his lack of knowledge is due to the fact that he made no examination. *Hatch v. Bigelow et al.*, 39 Ill. 546.

There is no claim that this property was in the actual possession of the appellant at the time of the levy of the writ of attachment. The assessment of the land to Jerome, his payment of taxes, and his improving the land from time to time, are strong evidences of his claim of right to the property; and if he had continued payment of taxes for the statutory length of time his absolute right to the property as against all persons might have accrued; and if these different things had been brought to the knowledge or attention of the appellee, they would have been sufficient to put it upon inquiry, the result of which would probably have been the ascertainment by the bank of appellant's claim of ownership. But they were not brought to its attention, and otherwise they do not constitute such acts as put a purchaser upon inquiry. *Ely v. Wilcox*, 20 Wis. 523.

Besides, these acts were not inconsistent with the rights of the record owner, particularly as the latter, with Jerome's knowledge and consent, exercised concurrent acts of ownership when he executed deeds to those who purchased lots from Jerome. An examination of the premises by the bank, which was its duty to make, would have disclosed nothing at all inconsistent with the ownership of the property by the one in whose name on the records the title stood, nor was there anything to lead the most careful person to suspect that Jerome, or any one else than Cline, asserted any claim to the ownership.

The point is made that as the appellee failed, upon the trial, to show an unsatisfied judgment, there should be a reversal. But the allegation in the amended answer that the judgment against Cline was unsatisfied, was not denied in the replication. Hence, no testimony of witnesses was necessary to establish the fact thus admitted.

It follows that the appellee, not having notice of any rights to this property asserted by the appellant, the judgment of the court below should be affirmed for the reasons given.

*Affirmed.*