## WAHRENBERGER v. WAID.

```
 8  200
11  484
 8  200
16   99
```

1. ATTACHMENT LIEN—UNRECORDED DEED—NOTICE.

A creditor who attaches real estate standing upon the records in the name of the attachment defendant acquires a lien upon the property attached which takes precedence of an outstanding unrecorded title or interest, provided the attachment is made without notice or knowledge of the outstanding title or interest.

2. NOTICE—CHANGE OF POSSESSION.

The mere fact that tenants who were in possession of premises at the time a conveyance was executed thereafter pay rent to the grantee does not constitute such a change of possession as to impart notice of the vendee's rights or put an attaching creditor upon inquiry.

*Appeal from the District Court of Arapahoe County.*

Messrs. BETTS & RINKLE, for appellant.

Mr. W. W. DALE, for appellee.

THOMSON, J., delivered the opinion of the court.

On the 23d day of February, 1894, John J. Wahrenberger purchased certain real estate in the city of Denver and caused the deed to be executed to Gus. T. Mahlum. This deed was duly recorded. On the 12th day of March, 1894, Mahlum executed a deed for the same property to Wahrenberger. This last deed was not recorded until April 21, 1894. On the 19th day of April, 1894, two days before Wahrenberger's deed was recorded, Orin C. Waid brought suit against Mahlum to recover the amount due upon certain promissory notes executed by Mahlum, and caused a writ of attachment to be issued, which was, on the same day, levied upon the real estate mentioned. Wahrenberger filed a petition of intervention in the cause, claiming the ownership of the attached property, and praying that it be adjudged to him. The plaintiff answered the petition, and a trial of the issues thus joined resulted in a judgment against the intervenor, from which he appealed to this court.

The attachment was made in reliance upon the title as it appeared of record. It seems from the evidence that the intervenor proposed to negotiate a loan upon the property, but did not desire to make himself personally responsible by signing either the notes or the instrument or instruments securing them, and therefore had the conveyance made to Mahlum, so that the latter could execute the proper papers. A loan, either genuine or fictitious, was effected, and secured by the execution by Mahlum of notes and deeds of trust. Mahlum then executed the deed to the intervenor of which we have spoken. The intervenor paid Mahlum for his services. The following is what the intervenor, in his testimony at the trial said concerning this somewhat peculiar transaction.

" The object in putting this title in Mr. Mahlum's hands was to sign the trust deeds. The object in signing trust deeds on the property was that you can dispose of or trade the property to better advantage. I proposed to encumber the property and then sell or trade the equity to some third party. The consideration I paid for this property, was some lots on Kountze Heights. These lots in Kountze Heights were in Mr. Mahlum's name. The lots on Kountze Heights, I think, were transferred to Mr. Mahlum in December. Those lots were put in his name in order to make a trade. Those lots were owned by me. * * * No money was received by me on these trust deeds on the property. These trust deeds are simply incumbrances on the property in order to enable me to trade in the equity. The title of the Kountze Heights property was put in Mahlum's name in order to put some trust deeds on it. He never had any interest in the property at all. Whatever was paid in property or money was advanced by me, and the title was taken in his name for the purpose of putting on the trust deeds."

The following is section 215 of the General Statutes: " All deeds, conveyances, agreements in writing of, or affecting title to real estate or any interest therein, and powers of attorney for the conveyance of any real estate or any inter

est therein, may be recorded in the office of the recorder of the county wherein such real estate is situate, and from and after the filing thereof for record in such office and not before, such deeds, bonds and agreements in writing shall take effect as to subsequent *bona fide* purchasers and incumbrancers by mortgage, judgment or otherwise not having notice thereof." The lien of an attachment is of the same nature as that of a judgment. The difference between the lien of an attachment and that of a judgment is that the former is acquired prior to judgment, while the latter cannot become operative until after judgment is entered; but the purpose and final effect of both are the same, and the word " otherwise," as used in the foregoing section, would include attachments. A creditor, therefore, who attaches real estate standing upon the records in the name of the attachment defendant, acquires a lien upon the property attached by virtue of the statute, which takes precedence of an outstanding unrecorded title or interest, provided the attachment is made without notice or knowledge of the outstanding title or interest. *First Nat. Bank v. Campbell*, 2 Colo. App. 271; *Gates Iron Works v. Cohen*, 7 Colo. App. 341; *Campbell v. First Nat. Bank*, 22 Colo. 177; *Jerome v. Nat. Bank*, 22 Colo. 37.

There is no evidence that the plaintiff, at the time his attachment was levied, had any actual notice or knowledge either of the unrecorded deed from Mahlum to the intervenor, or of the character of the title held by Mahlum prior to his execution of the deed. It appears, however, that when the property was conveyed to Mahlum, it was occupied by tenants of his grantor, who, after the conveyance, paid rent to the intervenor's agent; and it is seriously argued that the attornment of the tenants to the intervenor was such a taking possession by him of the premises as to impart notice of his rights to the world, or at least to put persons interested upon inquiry. We may concede that if, when Mahlum received the conveyance, there had been an actual change in the occupancy of the land, the plaintiff would have been affected with knowledge of the change, and would have

neglected at his peril to inquire of the new occupants what was the nature of their possession, or under what title they held; but we are relieved from the necessity of looking into any question which might arise upon such a state of facts, because, in this case, there was no change of occupants at all. The tenants who were upon the ground when Mahlum took his conveyance remained upon it; the record afterwards showed him to be the owner of the property, and presumptively the tenants became his tenants; but there was nothing visible to indicate that the intervenor, any more than any other stranger to the record title, was their landlord. There was nothing in sight from which any interest of the intervenor, equitable or otherwise, might be suspected. To all appearances, at the time the attachment was made, the property belonged to Mahlum; and the plaintiff being without actual notice of the intervenor's title, as well as without notice of anything which would make it his duty to inquire, the right which he secured by his attachment was superior to that which the intervenor gained by his deed. See *Loughridge v. Bowland,* 52 Miss. 546. Furthermore, it is quite evident that it was not the intervenor's intention that his relation to the title should be known outside of himself and Mahlum, until after the accomplishment of the purpose he had in view when he purchased the property. He covered up his title in Mahlum's name; the very consideration of the purchase was other property which stood in the name of Mahlum; by the concealment of his interest he expected to gain some advantage, fair or otherwise,—but probably otherwise,—of which direct and open dealing would have deprived him; and, if his true relation to the title had been discovered, it would not have been through any lack of diligence on his part in hiding it from public view. We think his efforts at secrecy were entirely successful. At any rate, in view of his own disclosures in relation to the matter, we do not think he is in a position to claim that his design in this respect was thwarted.

But counsel attempt a distinction between a case where

the unrecorded deed is the consummation of an actual purchase at the time and a case where it is merely the execution of a trust. They argue that as Mahlum never had anything but a naked legal title, which he held in trust for the intervenor, and as the latter was therefore at all times after the conveyance to Mahlum the real owner of the property, the attachment, being against Mahlum, who never had any interest in the property, could not bind it. Either counsel have not expressed themselves with sufficient clearness, or we are dull of apprenension; for, as far as at present advised, we are unable to see why the fact that the intervenor paid the consideration to Mahlum's grantor at the time the property was conveyed to Mahlum should, as against the latter's creditors, excuse the intervenor from recording the deed which he finally received, any more than if he had purchased directly from Mahlum, and paid the consideration to him at the time of the purchase. It is the fact that the intervenor's title was not of record, no matter when, how, or to whom the consideration was paid, or whether there was any consideration, that prevents his deed from taking effect as against this attachment, made without notice of his title.

The intervention is without merit, and the judgment must be affirmed.

*Affirmed.*