Bissell, J.,
delivered the opinion of the court.
Though the facts found be accepted as entirely true, and *481 the legal principle on which the decree was based be accepted, the decree as entered does not on the record correctly determine the rights of the parties. The counsel who drew it apparently overlooked one of the fundamental propositions which always controls a settlement of the accounts and rights of the mortgagor and mortgagee. Before the mortgagee can be compelled to surrender his title he must receive the money secured by the instrument. The force of this suggestion will appear as we state the case and formulate our conclusions.
The property in dispute is situate near Fort Logan in this county. We do not know the extent of it or its value. It was realty on which there were some buildings which had for some years both before and after the date of the transaction been occupied by one Kovsky and some persons jointly interested with him in business. In 1890 Mrs. Davis intermarried with Kovsky and for some time thereafter they either occupied it or rented it to others. Kovsky had owned the property and according to the allegations of the complaint and Mrs. Davis’s testimony, he sold to her before their marriage. As the appellee testified she carried the deed about in a bag and kept actual possession of it and never recorded it. Differences arose between them and they were divorced. Mrs. Davis alleges that while they were living together as husband and wife and working a ranch in the country above Denver, a fire happened and the deed was burnt up. During the time the property was occupied by tenants the money was sometimes paid to Kovsky, occasionally perhaps to his wife, but more generally to Kovsky’s creditors to whom he became indebted when he was carrying on business in the place either alone or in conjunction with his wife. Mrs. Kovsky had knowledge that the debts were being contracted and from time to time out of the proceeds of the business and from money borrowed, she paid some of the notes. Some of the creditprs became pressing and Kovsky was compelled to borrow money, and he negotiated a loan of some f800 or thereabouts with one of the defendants, Solf, and gave a warranty deed to secure the money. The terms, date or charac *482 ter of the loan need not he stated, what has been said is enough. When Solf loaned the money and took the warranty deed he gave a defeasance agreeing to reconvey on the payment of the sum borrowed. As near as we can judge though we have not critically examined the record, the separation of the parties occurred subsequently. The deed and the defeasance were put on record. It does not clearly appear by whom the rents were thereafter collected, nor who had the control of the property, although there is a little evidence in that direction given by Mrs. Davis, but the facts about the matter are not clearly developed nor satisfactorily established. By reason of this situation and in view of another trial we are compelled to avoid stating more than is essential to our conclusions. After all these things had happened Kovsky negotiated a sale of the property to one of the defendants, Sliney, who had been at one time and possibly was at the time of the purchase, a tenant of the property paying rent. He had been there for some time and Mrs. Davis states that she told him she owned the property. This he denied and the court found against her and that he was in fact an innocent purchaser. Mrs. Davis also states that she collected rent of him. This he denies and what the effect may be the court does not find. This sale to Sliney was made in November, 1891. When it was negotiated it would appear that Sliney, Solf, Kovsky and some other parties from whom Sliney borrowed part of the purchase price came together. Sliney agreed to pay $1,600 for the property. The price was acceptable to Kovsky, and it was agreed between them that Sliney should pay off the Solf mortgage, pay some other debts which Kovsky owed, and pay Kovsky the balance. Everything was satisfactorily arranged between them, and it was concluded that since Solf held the title by warranty deed he should convey directly to Sliney. This is as near the situation as we can extract it from the record of a very imperfectly tried case. Having concluded that the decree ought not to be confirmed we reverse the case with little hesitation because of the method of trial. Issue was joined and while *483 the case stood on the docket for trial Solf’s attorney noticed it, the plaintiff came in, and the issue between the plaintiff and Solf was first tried. Solf had judgment in his favor. On the suggestion of Solf’s counsel, the further hearing was postponed for a month more and Sliney was notified to appear. He came in, as did Kovsky, and they gave their testimony. At neither time were the witnesses fully cross-examined, the subject so investigated, or such testimony produced as to permit Sliney’s rights to be well adjudged. This circumstance would incline us even in a doubtful ease to reverse the judgment in order that the rights of the parties might be thoroughly investigated and a judgment rendered on full testimony. But as the case now stands we have little doubt.
On the conclusion of the evidence the court rendered a decree substantially deciding that Sliney was an innocent purchaser, that Mrs. Davis was the holder of a title by an unrecorded deed, and that Sliney’s title came through Solf the mortgagee. On these facts he concluded that since Sliney’s title was derived from a mortgagee he must hold as though he had been a mortgagee himself, and that he could not be an innocent purchaser under the statute and ordered judgment accordingly. The decree provided that an account should be taken of the rents and profits since the 21st of March, 1892, the value of its use and occupation ascertained, and if the sum was equal to the Sliney claim, then he should convey the legal title to the plaintiff, and if the sum found due should exceed the sum due, then plaintiff should have judgment against him for the difference. It will thus be seen that the decree failed to determine the rights of the parties in case the rents, issues and profits and the value of the use and occupation combined should be less than the sum due Sliney. In such event the plaintiff evidently ought to pay Sliney the difference between the sum which he paid for the property and what he had received. This is a very radical defect and for this reason if for no other the decree should not be allowed to stand, though whether that might not be provided for in the accounting and the court thereafter *484 might modify the decree so as to preserve his rights we do not inquire; it is simply an added reason for the reversal. When the court found that Sliney was an innocent purchaser for value, his title would have been a good one had Solf theretofore conveyed the property to the mortgagor and Kovsky deeded to him. Of this there can be very little question. Our statute, General Statutes, 1883, section 215, has been frequently construed and there is no doubt respecting its terms and force. Wahrenberger v. Waid, 8 Colo. App. 200; Jerome v. Carbonate Nat. Bank, 22 Colo. 37; McMurtrie v. Riddell, 9 Colo. 497.
Sliney then got a good title unless it was defeated by the fact that he got it by deed from one who was a mortgagee, though holding by a warranty deed. We recognize the universality of the rule that an absolute deed given by way of security can be shown to be a mortgage, and when the character of the instrument is thus ascertained whether proved by an independent instrument or by parol testimony, the deed ceases to be a deed, but is a mortgage security subject to all the limitations and conditions which surround such conveyances. We likewise concede as a general proposition that where a deed has been executed by way of mortgage its character cannot be changed, but it will remain a security unless its character be altered by the acts of the parties done in good faith and in such manner that a court of equity will approve the transaction. Courts of equity look with suspicion upon transactions between mortgagor and mortgagee which are supposed to change the nature of the instrument from one of mortgage to one of absolute conveyance and will always closely scrutinize what is done to prevent any oppression of the debtor. This comes from the circumstance that debtors are regarded with favor by these courts and that such is the frailty of human nature when once a debtor becomes embarrassed he submits to all sorts of imposition and oppression in order to relieve his immediate and pressing necessities. Bearing this in view when a party asserts that the deed which was given as security has, by agreement of the parties, been *485 changed into an absolute conveyance, he must establish this proposition to the satisfaction of the court. It seems to be equally well settled that the release of the mortgagee from the conditions which would bind him to treat the transfer as one of security and discharge him from his ¡duty in that regard, must be satisfactorily established either by a written instrument or by proof of such facts as would estop the mortgagor from asserting any interest in the premises. If this be done, there is no doubt about the right of the mortgagee to insist upon the absolute character of his deed and maintain his title even as against the mortgagor. This seems to be clearly settled. Peugh v. Davis, 96 U. S. 332.
Now if this be true as to the mortgagor, we see no reason why the same principle should not be applicable where the bill is filed by one asserting a title under an unrecorded deed antecedently executed by the mortgagor who had incumbered the property. How the case will stand on the subsequent trial we cannot foresee. It may be that the whole character of the case will be changed and the evidence will develop the fact that Kovsky got no part of the consideration, and that he was simply a party consenting to the execution of the deed by Solf, and that the money went to those whom he was not obligated to pay, or if obligated that the debts were of a character which would not permit a court under these circumstances to treat them as equities though Sliney paid them. We prefer not to express any decided opinion as to what our convictions might be under some other circumstances, but on the record as it stands, when it is demonstrated as it is by the finding of the court, that Sliney was a purchaser in good faith, without fraud, without knowledge of Mrs. Davis’s title, or the want of authority in Kovsky to contract and convey, and when it appears as it does from the record, that Sliney paid Iris money, that he discharged Soli’s mortgage, paid other of Kovsky’s debts, and paid the balance of the consideration to Kovsky himself, it must be true that Kovsky could not be permitted in a court of equity to assert that the deed which Sliney got was a mortgage. He would be estopped to assert that the transfer was one of security *486 and that Sliney got no title. He would not he permitted to stand by and see Sliney pay his money partly to Solf, partly to his creditors, and take part of it himself, and then come in and assert that he was oppressed and that the creditor took advantage of the situation and was bound to hold the deed as a mortgage. If this be true, we do not well see why the facts which would have estopped Kovsky should not be held likewise to conclude Mrs. Davis. She had no recorded title. Sliney had investigated the records and found the title to be in Kovsky, and he had every right to deal with him on the faith of it. There is still a further element of laches on the part of Mrs. Davis which may or may not affect the result, dependent on the ultimate proof. She got her deed before her marriage and never put it on record. She married Kovsky and lived with him; let the title stand in his name, permitted him to borrow money on the faith and strength of it and give a mortgage to secure its payment. Of the fact of the execution of the mortgage to Solf and the giving of the defeasance to Kovsky, she must he constructively charged with notice if she did not have actual notice. The deeds were on record, they affected her title; she was bound by what that record showed. She stood idly by and permitted Kovsky to deal with the property as his own until it passed into the hands of a person who under our statute and our decisions is entitled to insist on his conveyance. Such laches will not permit her to assert rights and equities which Kovsky himself could not assert. Therefore we conclude that since Kovsky was estopped, if the evidence is to he believed, from asserting that Sliney got only a mortgage title Mrs. Davis must he estopped unless on the final trial the facts shall be shown to be otherwise, or such proof be introduced as will prevent the application of this doctrine.
Believing that the judgment is erroneous and ought not to stand as against Sliney on the record as now made, the judgment will be reversed and remanded for a new trial in conformity with this opinion.

Reversed.