### [No. 1791.]

### PERKINS ET AL. AS EXECUTORS v. ADAMS ET AL.

1. ESTATES OF DECEDENTS—MORTGAGES—EXECUTORS.

Where the executors of an estate loaned money of the estate, taking a note secured by a deed of trust on real estate, at a foreclosure sale of the real estate the executors could purchase the property in their individual capacity.

2. SAME—ATTACHMENT.

Where two executors of an estate loaned money of the estate, taking a note payable to them as executors and secured by a deed of trust on real estate, and default being made the executors requested the foreclosure of the deed of trust, and at the foreclosure sale one of the executors bid in the property, in reality for the estate, and the purchase price was credited on the note, but the trustee's deed conveyed the property to him in his individual capacity and name, reciting that he was the highest and best bidder and acknowledging receipt of the purchase price, which deed was duly recorded, attaching creditors of the individual executor who had no actual notice that the property was purchased for the estate and who levied upon the property as the property of the individual executor and for his individual debt acquired a lien superior to the equitable title of the estate.

3. ATTACHMENT—LIENS—UNRECORDED TITLE.

An attachment lien acquired without knowledge of the existence of an outstanding unrecorded interest in land is superior to such outstanding interest, whether it rests in a resulting trust or in a deed.

*Appeal from the District Court of Arapahoe County.*

Mr. CHARLES H. TOLL and Mr. D. V. BURNS, for appellants.

Messrs. THOMAS, BRYANT & LEE and Mr. SPRIGG SHACKLEFORD, for appellees.

THOMSON, J.

Edward C. Perkins and Charles S. Maurice were executors of the will of Albert E. Touzalin, deceased. Touzalin died on the 12th day of September, 1889, and his will was admitted to probate in the county court of El Paso county, on the 12th day of November, 1890. It directed that no division whatever of his property should be made for a period of five years after his death. On the 26th day of September, 1891, the executors loaned $30,000 of the money of the estate to George Bailey, who secured the loan by a trust deed upon real estate in East Denver. Henry Van Kleeck was the trustee to whom the property was conveyed. The note that evidenced the debt was described in the trust deed, and, by its terms, was payable to "Charles S. Maurice and Edward C. Perkins, Executors." The note was not paid at its maturity, and the trustee, upon the request of the executors, proceeded to advertise and sell the property pursuant to the terms of the deed. The notice of sale described the note, and mentioned the names of its payees as "Charles S. Maurice and Edward C. Perkins, Executors." At the sale, the property was purchased by Edward C. Perkins, and it was conveyed to him by the trustee. The deed by which it was conveyed recited that he was the highest and best bidder, and invested him personally with the title. It was dated September 4, 1895, and was recorded on the 6th day of September, 1895.

On the 21st day of January, 1897, Frank Adams and George W. Holmes commenced suit against Edward C. Perkins and others to recover the amount of an indebtedness alleged to be owing to them by the last mentioned parties,

and caused a writ of attachment to be issued in the suit, and levied upon the property which had been conveyed to Perkins. Afterwards, on the 19th day of January, 1897, T. J. Kane commenced suit against the same parties, in which a writ of attachment was issued and levied upon the same property.

On the 15th day of March, 1897, Perkins executed a conveyance of the property to Charles S. Maurice and himself, as executors of the will of Albert F. Touzalin. On the 18th day of August, 1897, the executors commenced this action against Adams, Holmes and Kane, to remove from their title the cloud created by the levy of the attachment writs, alleging, in addition to matters we have stated, that Perkins never paid any part of the purchase price of the property from his own money, but took and held the title as trustee for the estate of the decedent; that from the 4th day of September, 1895, the plaintiffs were in the possession of the property as executors of the will of Touzalin, and that each of the defendants had due notice of the capacity in which Perkins held the title, and of the possession of the property by the plaintiffs as executors, before they caused their attachments to be issued. The defendants answered setting up their attachment liens, and denying notice or knowledge that Perkins was not the absolute owner of the property, or that he held the title otherwise than in his individual capacity. The trial resulted in a judgment for the defendants, and the plaintiffs appeal.

Upon an examination of the record, we find the following undisputed facts: The price bid by Perkins for the property, being $27,500, was not paid by him, but was credited upon Bailey's note; the conveyance was taken in his name, because the general business of the estate was done in his office in Boston, Massachusetts, and as his coexecutor lived in Athens, Pennsylvania, and was frequently absent from home, and in case of a sale it might be inconvenient to send the papers to him for execution, it was desirable to avoid the necessity of so doing; for a considerable period before the sale, the exec-

utors, by their agent, collected the rents due from the tenants on the premises; as against the estate, Perkins never had or claimed any right in the property, but held the title solely for its benefit, and none of the defendants had any actual notice of the interest of the estate in the premises.

There can be no doubt that as between Perkins and the estate, the property belonged to the latter; but we must look farther to find what the rights of the estate, as against these defendants, may be. It is provided by section 215 of the General Statutes as follows:

"All deeds, conveyances, agreements in writing of, or affecting title to real estate or any interest therein, and powers of attorney for the conveyance of any real estate or any interest therein, may be recorded in the office of the recorder of the county wherein such real estate is situate, and from and after the filing thereof for record in such office, and not before, such deeds, bonds and agreements in writing shall take effect as to subsequent *bona fide* purchasers and incumbrancers by mortgage, judgment or otherwise, not having notice thereof."

By virtue of that provision, a purchaser or incumbrancer of land, may rely on the title which he finds upon the record, and will be protected against an outstanding claim which the record does not show, and of which he has no actual notice. And it has been held by the supreme court and this court that the lien of an attachment is an incumbrance within the meaning of the statute, and takes precedence of an unrecorded title or interest, of which the attaching creditor had no notice at the time of his attachment. *Jerome v. Bank,* 22 Colo. 37; *Campbell v. Bank,* 22 Colo. 177; *Gates Iron Works v. Cohen,* 7 Colo. App. 341; *Wahrenberger v. Waid,* 8 Colo. App. 200. These defendants found the title to the property in question standing upon the record in the name of Mr. Perkins; and in their suits against him, levied their attachments upon it. They had no actual notice of the interest of the estate in the premises, and unless they are chargeable with notice of something else calculated to excite

suspicion, and suggest an inquiry which, if followed up, would lead to a knowledge of the true situation, the claim made in behalf of the estate is subject to their lien.

A purchaser of land, or one asserting an interest in or claim upon it, is presumed to have notice of everything which the record discloses concerning the title; and if in a deed which constitutes a link in a chain of title, there is a recital, or an inference, or a word, which is not self-explanatory, but which indicates the existence of some condition by which the title may be affected, he is bound to follow up the clue by investigation ; and he will be charged with knowledge of the facts to which it points, whether he makes the investigation or not. No doctrine is more thoroughly established than this, that what is enough to put a purchaser on inquiry, is equivalent to actual notice, and that when he has information sufficient to lead him to a fact, he will be presumed to know it.

It is upon this doctrine that the plaintiffs rely to avoid these attachment liens. The line of reasoning on which counsel proceed, is that the trust deed, and the deed from the trustee to Perkins, notified the defendants that Perkins was acting in a representative capacity. The trust deed was executed to secure a note payable to " Charles S. Maurice and Edward C. Perkins, Executors ; " and the notice of sale, which was incorporated into the deed from the trustee to Perkins, contained the same description of the payees of the note. Therefore, it is said that the defendants were bound to know the extent of the authority conferred upon the executors by the will, and were also bound to know the capacity in which Perkins took the title. We agree with counsel that the word " executors," as it occurs in the instrument, is not necessarily a mere *descriptio personarum ;* and if it had been the note which was the subject of Perkins's purchase, or if in the deed to him the word " executor " had followed his name, a person dealing with him in relation to either the note or the land, would be bound to inquire into the effect which the word was intended to have upon his

title. But the land was not conveyed to him as executor. Whatever effect might be given to the instrument of conveyance by the preceding records, on its face it invested him personally with the title. It recited that he was the highest and best bidder, and that the property was sold to him for the amount of his bid; it also acknowledged the receipt from him of the purchase price. He was a party to that instrument in his individual capacity; and the intention of the parties, as it appears upon the face of the deed, was to invest him with the title in his own right. This is not the case of a trustee purchasing at his own sale, for Perkins did not make the sale; and it is not the case of an executor purchasing property belonging to the estate of his testator, for the estate did not own the land. Neither the legal nor the equitable title to the premises sold, was in the estate. The legal title was in Van Kleeck, and the equitable title in Bailey. The only right which the estate had in connection with the land, was the right, in case of Bailey's default, to have it sold by the trustee, and the net proceeds applied in payment of its note. The estate was interested in having it bring the best price obtainable up to the amount due; and, so far as the land was concerned, it was interested no further. The sale was not made by the executors, and land of the estate was not the subject of the sale. The authority to sell was vested in Van Kleeck as trustee; it was his duty to strike the property off to the highest and best bidder, and the interests of the estate demanded that he should do so; but provided the purchase money was paid, it was a matter of supreme indifference to the estate who was the successful bidder. The money of its executor was as good to it as the money of a stranger. None of the reasons for which a trustee is forbidden to deal for his own benefit in the property of his *cestui que trust*, has even a remote bearing upon such a transaction as this appears upon the records in the office of the recorder of deeds to have been.

We have been cited to no decisions, and we have found none, which are at variance with the views we have expressed.

There are cases, however, which shed some light upon the question under discussion, a few of which we shall notice. In *Dillinger v. Kelley*, 84 Mo. 561, the administrator with the will annexed was interested in the purchase of land of the testator at a foreclosure sale. His purchase was attacked on the ground that the administrator was a trustee, and could not buy at the sale. The court, in disposing of the question, said: " In the matter of the foreclosure sale, Daws Kelley, as administrator, had, in that capacity, neither power to exert, nor duty to perform. I prove this by asking this question, which suggests at once its own negative answer: Suppose the administrator had not attended the foreclosure sale, or purchased the land sold thereat, would that have rendered him liable on his bond, as and for a breach of that bond? If it would not, then it stands to reason that, having no duty to perform regarding that land, which required his presence at the sale, when he went there and bought the land, he did so on the footing of the merest stranger, free to buy, or free to forbear." That was a case in which land belonging to the estate was sold. *Briant v. Jackson*, 99 Mo. 585, was a case in which land of a party against whom the estate had recovered judgment, was sold under execution issued upon the judgment, and the administrator was charged with being interested in the purchase. The right of the administrator to be a purchaser was denied, and upon the question of such right the court said: " Having as said administrator recovered said judgment, it was his privilege and duty to direct the clerk to issue the execution, and this, we suppose, was done by the administrator in this case, or perhaps by his attorneys; but after the execution came to the hands of the sheriff, the sheriff, and not the administrator, was charged by law with the execution of the process, with the return and application of the purchase money, with the due execution of proper deeds to the purchasers, and in short with the entire responsibilities of the sale. * * * So that if the administrator was in effect and in fact the purchaser, as is charged by the bill, he had, we think, a right to be, at that sort of sale, pro-

vided his conduct was fair and just in all respects." The same doctrine was announced in *Johns v. Norris*, 7 C. E. Greene, 102, and *Hollingsworth v. Spaulding*, 54 N. Y. 636. See also *Den v. Hillman*, 7 N. J. L. 180; *Wilson v. Miller*, 30 Md. 82.

Counsel for the plaintiffs have cited us to the case of *Dusing v. Nelson*, 7 Colo. 184, but for what purpose, we confess our inability to understand. No question made here was involved in that case. Dusing executed to Graves, as trustee, a trust deed to secure the payment of a promissory note to Butler. The note not being paid at maturity, the premises were advertised for sale as required by the trust deed. The amount due upon the note was $1,800. At the sale, the highest bid offered was $625. Thereupon the trustee bid for the executors of Butler, who was then deceased, the sum of $1,500, and that being the highest bid, the premises were struck off and sold to them for that sum. A few days afterwards, Nelson purchased their bid for $1,800, and, by their direction, the trustee made the deed directly to him. The entire sum of $1,800 was credited on Dusing's note. Nelson brought ejectment against Dusing, and his defense was irregularity in the sale and the execution of the deed. It appears that the property was struck off to the executors in their representative capacity; and the point was made that they could not so purchase at the trustee's sale, even if present. Respecting that, the court said that as an unlimited proposition of law, it was not correct. The features of the case are very indistinctly outlined, but it is evident that the controversy related only to the power of the executors to purchase the premises for the benefit of the estate. The court held that they possessed such power, and cited in support of its decision, Schouler on Executors and Administrators, § 323, where it is laid down that when it becomes necessary to save the estate from loss, it is not only the right but the duty of the executor or administrator to purchase the property for the benefit of the estate. But the right of an

executor or administrator to purchase for himself land sold to satisfy an indebtedness to the estate, was not in question.

We feel satisfied that, as between Perkins and the estate, in the absence of fraud, there was no reason why he should not purchase the premises in question for himself. But as a matter of fact, he did not do so. By an arrangement between himself and his coexecutor, he took the title for the benefit of the estate, proposing to sell the property, and turn the proceeds over to the estate. As between himself and the estate, he was a trustee, and equity would compel him to account to the estate for the property; but third persons would not be affected by the trust, unless they had actual notice of its existence, or unless there was something which they were bound to know, suggestive of its existence. Now it is true that by examining the records, the plaintiffs would have found that Maurice and Perkins held Bailey's note as executors, and that, as executors, they had the right, if Bailey made default, to cause the real estate described in the trust deed to be subjected to the payment of the note. And, if they had consulted the will, they would have found that Maurice and Perkins were, as executors, in charge of the estate of Albert E. Touzalin, deceased. From the records they would also have found that at the request of Maurice and Perkins, as executors, the trustee advertised and sold the property, and that Perkins was the purchaser. But none of these discoveries, which they might have made, and probably did make, conveyed the smallest hint that the deed which the trustee made to Perkins conveyed anything short of an absolute title. The executors had the right to demand the sale of the property; the trustee had the right to sell it; and, when sold and conveyed by him, it would be discharged from the lien of the trust deed, and from all claim of the estate upon it by virtue of the trust deed; so that the mere fact that Maurice and Perkins held the note and trust deed, and procured the sale of the property, as executors, would indicate nothing as to the nature of the title taken by the purchaser. What that title might be, must be determined by an

examination of the deed by which it was conveyed; and if that purported to convey an absolute title, and contained nothing to excite suspicion of the existence of an outstanding interest, then as to purchasers and incumbrancers not having actual notice, the grantee would be the owner of the land in his own individual right. And the plaintiffs were not charged with notice of any weakness in this title by the fact that the purchaser was one of the executors; because, as we have seen, at that sale, he was upon the same footing with a stranger, and had the same right to purchase. Now an examination of the deed from the trustee to Perkins discloses nothing to suggest a necessity for inquiring whether there might not be some secret trust connected with the title. The deed recites that Perkins was the highest and best bidder, and that the property was sold to him; it acknowledges the receipt of the purchase money from him, and conveys the land to him, his heirs and assigns, forever. This is the record which the estate, by its executors, caused to be made upon the title; and as to outside parties, with no knowledge of the situation except what may be gained from it, it imports absolute verity. The plaintiffs were entitled to rely upon that record, and were not called upon to look further. They are supposed to have known that Perkins might lawfully purchase for himself at the sale by the trustee, and, finding upon the record, a deed from which it appeared that he had so purchased, they had the right, in the absence of other knowledge, to regard the property as his. Furthermore, the records disclosed that always theretofore, Maurice and Perkins had transacted the business of the estate jointly, being careful, in every instance, that the representative capacity in which they were acting, should appear. The money was loaned by them jointly, as executors; the note was payable to them jointly, as executors; in the deed of trust, they, as the beneficiaries, were described as executors; and the land was advertised for sale, at their instance, as executors. But at the sale, the property was struck off, not to Maurice and Perkins, and not to Perkins as executor, but to Perkins personally; and the

deed was a conveyance to him as an individual.    From the
fact that down to the sale, the executors had always been
careful to notify the world that they were acting as such, the
natural supposition would be that the reason why the deed
to Perkins did not describe him as executor, was that he did
not purchase as executor.

In the case of *Appelman v. Gara*, 22 Colo. 397, to which
we are referred, the facts were as follows: Gara loaned
Shugart $1,200.    The loan was evidenced by a promissory
note, the payment of which was secured by a trust deed
whereby Shugart conveyed a city lot to Griswold, with power,
in case of default in the payment of the note, to sell the prop-
erty at public auction for cash, after three weeks' notice.
The deed was duly recorded.    Shugart afterwards conveyed
his equity in the property to Lack, who then conveyed it,
subject to the trust deed, to McIntyre.    McIntyre soon after-
wards conveyed her interest to Hoffman, and the latter al-
most immediately conveyed the property to Griswold, the
original trustee, subject to the trust deed.    All these con-
veyances were duly recorded.    Afterwards, and before the
maturity of the note, without authority from Gara, the bene-
ficiary, and without the payment of the note, Griswold, the
trustee, executed and caused to be recorded a deed of release
to Shugart.    Sometime thereafter, Griswold executed a trust
deed to McAdams, as trustee, to secure the payment of
$1,400 to Appelman.    Gara brought suit to set aside the
release deed, and the court held that there was sufficient in
the fact that the debt was not due when the deed was made,
coupled with the other fact that the release deed made by
Griswold was virtually a release to himself of a debt to which
his purchase of the property was subject, to excite suspicion
and put Appelman on inquiry.    The act of Griswold was
peculiar, and out of the ordinary.    A release of property
from a trust deed before the debt becomes due, is not very
usual, but, coupled with that feature, the additional fact,
disclosed by the record, that the only benefit derivable from
the release accrued to the man who executed it, would seem

to call for investigation by one who proposed to become interested in the property under Griswold. That case is not in point. Some other authorities are cited in support of the familiar doctrine that a trustee cannot lawfully be a purchaser at his own sale, or deal for his own benefit with the property of his *cestui que trust*. No purchase by a trustee, at his own sale, is involved in this case; neither was the subject of Perkins's purchase the property of the estate.

But counsel say that the statutory provision, quoted early in this opinion, cannot be made applicable to this case, for the reason that it puts an attaching creditor upon the same footing with a purchaser only as against an unrecorded deed or contract. The long established rule, of which the statute is a modification, was that the lien of an attachment bound only the interest of the attachment defendant in the property attached. The reason of the rule was that if the levy should fail of its purpose, the plaintiff would lose nothing. Having parted with no value, his position would be no worse than it was. *Gates Iron Works v. Cohen*, 7 Colo. App. 341. That rule is still in force, except in so far as the statute has changed it; and if we consider only its letter, the statute has made no change in the rule, except in respect to a title to real estate evidenced by an unrecorded deed or contract, of the existence of which the attachment plaintiff is ignorant. There is much force in the argument that the statute is not applicable to an outstanding equity, which does not subsist in writing; and that hence, in this case, the interest of the estate in the property arising out of a trust with which the law charged Perkins, and being evidenced by nothing which could be the subject of record, the defendants took nothing by their attachment. But upon the question which counsel seek to raise, the supreme court has expressed itself, holding that an outstanding unrecorded interest in land, whether it rests in a resulting trust or in a deed, must yield to the lien of an attachment acquired without knowledge of its existence. *Campbell v. First National Bank*, 22 Colo. 177. We are bound by that decision. It is, however, suggested that the utterance is mere

dictum—unnecessary to the decision of the case—but until the court which is responsible for it says so, we must regard it as law.

The judgment is affirmed.

*Affirmed.*