[No. 1943.]

## The New La Junta and Lamar Canal Company et al. v. Kreybill et al.

**1. Evidence—Voluminous Documents—Oral Evidence.**

In order to prove how much water had been contracted and sold by certain water companies, where the records of the companies containing copies of all the deeds and contracts issued by the companies were before the court and the deeds and contracts numbered about eight hundred, it was not necessary to read all the deeds and contracts to get before the court their contents, but it was permissible for a witness who had examined the records of the company and computed from the deeds and contracts the amount of water sold, to testify orally as to the result of his examination. And the witness, being familiar with the deeds and contracts issued by the companies, and being shown a sample of the contracts and deeds, might testify that all the contracts and deeds were of similar import.

**2. Same—Proof of Records.**

Where two water companies had issued about eight hundred contracts and deeds for water which had been recorded in the offices of the clerks and recorders of three counties along the line of the canal, in order to prove the number of such instruments of record and the amount of water conveyed thereby, it was not necessary to introduce certified copies thereof, but a witness who had examined the records of the different counties for that purpose and counted the number of instruments on record and computed the amount of water conveyed thereby, could testify as to the result of his examination.

**3. Evidence—Best and Secondary.**

The rule requiring the best evidence is not inflexible, but yields in certain instances when the best evidence cannot be produced without inconvenience. Where the evidence desired is the result of voluminous facts, or of the inspection of many books or papers which cannot conveniently take place in court, secondary evidence is admissible.

**4. Water Rights—Conveyances—Mortgages—Notice.**

Where a canal company conveyed water rights by contracts which provided that, when the capacity of the canal had been sold, the canal and other properties and franchises of the company were to become the property of the water right owners, which contracts and deeds were recorded in the counties along the line of the canal, and lateral ditches were taken out and lands in cultivation along the entire line of the canal, and the

books of the canal company would have disclosed that the entire capacity of the canal had been sold, a mortgagee who took a mortgage upon the canal and property of the company, after the capacity had been sold, was charged with notice that the capacity of the canal had been sold, and that the company had nothing to incumber at the date of the mortgage.

**5.   Water Rights—Parties.**

Where a canal company sold water rights with a stipulation that when the capacity of the canal was sold, the ownership of the canal and other property and franchises of the company should vest in the water right owners and by a decree of court the canal was conveyed to a new company organized by said water right owners for the purpose of managing and operating the property, and the directors of the new company conspired and operated with the holder of a mortgage on the canal system executed by the old company after it had sold the entire capacity of its canal to water rights owners, to enable said mortgagee to enforce its invalid mortgage, the water right owners were proper parties to bring an action to cancel said mortgage and to restrain said directors and mortgagee from further attempting to obtain payment thereof from the property of the canal system.

**6.   Water Rights—Conveyances—Ownership of Canal and Reservoir.**

Where a canal company sold water rights with a stipulation that, when the capacity of the ditch was sold, the title to the canal should pass to the water right owners, and the company oversold the capacity of the canal, the title to an undeveloped reservoir connected with the canal and constructed by the canal company passed with the canal to, and vested in, the water right owners.

*Error to the District Court of Prowers County.*

Mr. Charles J. Hughes, Jr., for plaintiffs in error.

Mr. Charles E. Gast and Messrs. Rogers & Shafroth, for defendants in error.

Gunter, J.

The Arkansas River Land, Reservoir and Canal Company, a corporation, owned and operated until April 4, 1891, what is known in evidence as "The La Junta and Lamar Canal." This canal, length 113

miles, is situate in the counties or Otero, Bent and
Prowers.    The Prince and King reservoirs are a
part of the system, the Prince reservoir being sim-
ply a wide place in the ditch.    Some use has been
made of this reservoir for irrigation, none of the
King reservoir.    As early as 1890, water was turned
into the King reservoir; it cannot, however, be util-
ized in its present condition for purposes of irriga-
tion.    Such was its condition at the time of the insti-
tution of the Hess suit mentioned *infra,* and at the
time of the institution of the present action, its utility
depends on future development.    This system was
sold under judicial process April 4, 1891, sheriff's
deed being executed January 6, 1892.    By mesne con-
veyances the system passed to The La Junta and La-
mar Canal Company January 19, 1892.    Prior to No-
vember, 1891, by contracts and deeds, water rights
had been sold from the canal amounting to 977.4
cubic feet of water per second time.    At the Novem-
ber term, 1891, of the district court of Prowers coun-
ty a decree was entered restraining T. C. Henry, The
Arkansas River Land, Reservoir and Canal Company
from selling further water rights.    This was upon the
basis that the capacity of the canal having been over-
sold, further sales therefrom were in violation of the
water contracts and deeds.    The new company, The
La Junta and Lamar Canal Company, thereafter sold
73 additional water rights, calling for the delivery of
73 cubic feet of water per second of time.    April 18,
1893, John Hess, in his own behalf and in behalf of
all other owners of water rights in the canal, insti-
tuted suit in the district court of Prowers county
against The La Junta and Lamar Canal Company to
restrain the further sale of water rights by this com-
pany, contending as in the suit against its predeces-
sor company, the capacity of the canal had been over-
sold, also asking the appointment of a receiver and

for a specific performance of the water contracts and water deeds theretofore issued. On that date an injunction order was issued restraining the further sale of water rights, and on June 17, 1893, a receiver for the canal was appointed to operate it pending litigation. December 21, 1893, on final hearing the decree enjoining a further sale of water rights was made perpetual, a specific performance of the water contracts and deeds decreed and a receiver appointed pending appeal. The rights of the parties in the Hess suit were, and in the present action are, determined by the water contracts and deeds heretofore mentioned. These instruments provided that when the capacity of the canal should have been sold and two-thirds of the water rights so sold should have been paid for that the title to said canal should pass to the owners and holders of contracts for water rights in accordance with the prescribed plan. Further, that when this plan had been carried out the obligations of the company in respect to said ditch, and keeping the same in repair, or supplying water through the same, or any other ditch, canal or reservoir connected therewith, should cease. Further, that the canal when delivered to the water right owners under the above plan should be free of any debts against the same. The Hess case was tried to the court. In the decree appears *inter alia,* "And the court being now fully advised in the premises, doth find, that the capacity of the defendant's canal has been oversold, and that the plaintiff and the other holders of water deeds to be satisfied from the said canal and its reservoirs are entitled to a specific performance of the contract contained in their said deeds, and that they are equitably entitled to own and manage the said property.

It is therefore ordered, adjudged and decreed that the defendant company, by its proper officers, execute and deliver a proper deed of conveyance of

the said canal and its reservoirs, together with its property rights, priorities and franchises held in connection therewith, to such new corporation as the plaintiff and other holders of water rights in the said canal may organize for the purpose of operating and managing the said property; and in default of the defendant company so doing, let the clerk of this court execute such conveyance."

This decree was reviewed in *The La Junta and Lamar Canal Company v. Hess*, 6 Colo. App. 497; was modified merely as to the manner of transferring the canal and reservoirs, in all other particulars it was affirmed. An examination of the abstract and briefs in the case is convincing that this court held therein that the Prince and King reservoirs passed with the system to water right holders as the capacity of the canal had been oversold. In its opinion the court said: "The naked question in this case is whether the grantees are entitled to be treated as the owners of the property and have a right to insist on the formation of a new company according to the scheme outlined in their deed and to delivery of stock according to the terms of their contract. We conclude this time has arrived." In obedience to the remittitur in this case the district court of Prowers county, June, 1896, entered an amended decree in which appears *inter alia* the following: "The court doth find that at the time of the institution of this suit, the capacity of the defendant's canal to furnish water had been and now is oversold, and that the plaintiff and the other holders of water deeds to be satisfied from the said canal and its reservoirs are entitled to a specific performance of the contract contained in their said deeds, and that they are equitably entitled to own and manage the said canal and reservoirs, together with all the property rights, priorities and franchises held in connection therewith."

To effectuate this amended decree and to provide
for a conveyance in pursuance thereof of the canal
and reservoirs a corporation was formed June 3,
1896, entitled, "The New La Junta and Lamar Canal
Company." Among its five incorporators and di-
rectors were, and continued to be until the date of the
institution of the present suit, George E. Ross-Lewin,
cashier of defendant bank, Keely, assistant cashier,
and Patterson, receiver of The Colorado Securities
Company. The La Junta and Lamar canal and ad-
junct reservoirs were conveyed to the new company,
and the receiver, in pursuance of an order of court
delivered over the canal to the new company. June
15, 1893, after notice had been given by plaintiff in
the Hess suit, *supra,* that on June 17, 1893, an appli-
cation would be made for the appointment of a re-
ceiver for the canal pending litigation, The La Junta
and Lamar Canal Company, by its board of directors
passed the following resolution:

"Whereas, The La Junta and Lamar Canal Com-
pany is justly indebted to The Colorado Securities
Company in the sum of $28,769.17 for moneys ad-
vanced by the said The Colorado Securities Company
to this company, and paid out for its use, and the said
The Colorado Securities Company having requested
this company to better secure the payment of the
same, Therefore, Be It Resolved, That the vice-presi-
dent be authorized to execute a note to said The
Colorado Securities Company, for said sum payable
in thirty days from date, and that the vice-president
and the secretary be authorized to execute a trust
deed upon all of the company's reservoirs and canal
to secure the same."

A note and trust deed were executed pursuant to
such resolution. After maturity of the note it was
transferred to The First National Bank of Denver,
one of the plaintiffs in error. The present suit was

instituted December 21, 1896, to remove the lien of this trust deed as to the canal and reservoirs constituting the La Junta and Lamar canal system. Trial was had to the court and decree rendered July 2, 1897, in which appears *inter alia*:

"That prior to the fourth day of April, 1891, the said La Junta and Lamar Canal, together with its laterals, reservoir sites, known as the King and Prince reservoirs, and other property, was in control of and operated by The Arkansas River Land, Reservoir and Canal Company, subject to the water deeds and contracts then issued, to be satisfied therefrom, each right representing 1.44 cubic feet of water per second of time, flowing under a weir; that on or about the said fourth day of April, 1891, said property was sold, under judicial process, for the purpose of satisfying a certain indebtedness of the said The Arkansas River Land, Reservoir and Canal Company, and by certain mesne conveyances became and was vested in The La Junta and Lamar Canal Company; and that thereafter the said La Junta and Lamar Canal Company sold additional water rights therefrom.

"And the court further finds that at the time of the sale of said property, on or about April 4, 1891, said company, The Arkansas River, Land, Reservoir and Canal Company, had sold and had outstanding and in force a number of water rights evidenced by water contracts and water deeds more than equal to the estimated full capacity of said ditch to furnish water, and that at the time of the execution of the note and mortgage set forth in the complaint of The La Junta and Lamar Canal Company, the capacity of the said canal to furnish water, including the reservoirs as then developed, had been oversold.

"And the court further finds, that under the conditions as set forth in said contracts and deeds, the

owners of said water rights were then entitled to have conveyed to them, and were the owners, equitably, of the said canal, together with its rights of priorities, and said reservoirs, and the priorities of water thereto belonging, and that at the time of the execution of the trust deed and note in controversy, the said La Junta and Lamar Canal Company was without title, equity or interest in and to either the said canal or said reservoirs or their rights of priority to the use of water which could be the subject of a mortgage.   That the defendants, George E. Ross-Lewin, A. E. Reynolds, Alfred E. Bent, Thomas Keely and Frank G. Patterson constitute the board of directors of The New La Junta and Lamar Canal Company; that The First National Bank of Denver is a corporation   * *   *   and holds the note secured by the trust deed executed by The La Junta and Lamar Canal Company upon the said ditch and reservoirs   *   *   * as collateral to secure to it payment of a certain indebtedness of The Colorado Securities Company, said note coming into possession of and being assigned to said bank after its maturity; that as directors of The New La Junta and Lamar Canal Company they were given possession of said canal property by an order of this court made and entered in the suit of John Hess and others v. The La Junta and Lamar Canal Company, and they have operated with the said The First National Bank of Denver to aid and enable it to collect said note or to make it a charge upon the said La Junta and Lamar canal and its reservoirs and water rights thereto appertaining, and by means of said trust deed to cloud the title of said canal property.

"Wherefore it is ordered   *   *   *   that said note and trust deed   *   *   *   be and the same in so far as it purports to be a lien against the said canal property, including its reservoirs, and against the owners

of water rights issuing therefrom, be and the same
is hereby declared to be held null and void and in-
operative, and that the same be cancelled as a cloud
upon the title of said property as against the in-
terest of these plaintiffs and those similarly situ-
ated.''

The decree further enjoins the above directors
and said bank from attempting in any manner to ob-
tain payment from the said property or any part
thereof by said pretended trust deed.

Defendants in error adduced oral and written
evidence in support of the issues tendered by the
pleadings. The only testimony tendered in behalf of
plaintiffs in error was the above resolution of the
board of directors, also one of date April 5, 1892.

To review last mentioned decree plaintiffs in
error are here assigning seventy-three errors. These
go:

First—To the admission of evidence.

Second—That defendants in error are without
capacity to maintain this action.

Third—That June 15, 1893, the water right
holders were not the owners of the King reservoir,
that on such date it was owned by The La Junta and
Lamar Canal Company, therefore, subject to the trust
deed in question.

1. For the purpose of showing defendants in
error to be the holders of water rights in the said
canal and the number of water rights sold therefrom,
certain deeds and contracts were produced and the
books of The Arkansas River Land, Reservoir and
Canal Company. Also books of The La Junta and
Lamar Canal Company. These deeds were one from
The La Junta and Lamar Canal Company to Gallady,
dated August 23, 1892, recorded in the office of the
recorder of Bent county September 13, 1892. This
with the consent of grantor therein assigned to ap-

pellee Hasty July 10, 1893. The water right according to the terms of the deed was to be applied to land situate in Bent county. Deed from The Arkansas River Land, Reservoir and Canal Company conveying forty water rights in above canal, dated November 23, 1889, recorded in the office of the recorder of Prowers county November 29, 1889. The deed provided that the land upon which the water rights were to be applied was in Prowers county. Also mesne conveyances whereby certain parts of the lands embraced within the original deed and one water right were conveyed to appellee Cooper. Receiver Burke then produced the records of The Arkansas River Land, Reservoir and Canal Company and the records of The La Junta and Lamar Canal Company containing copies of all water contracts and water deeds issued by the two companies. It appeared that about 800 deeds and contracts had been issued conveying the right to 1,050.4 cubic feet of water per second. The witness having stated that he had made the computation from the company's records was asked as to the aggregate number of contracts and deeds and the aggregate number of cubic feet of water sold in the canal prior to April 18, 1893; also the number of feet sold by The Arkansas River Land, Reservoir and Canal Company. The witness, who showed himself familiar with the deeds and contracts issued by The Arkansas River Land, Reservoir and Canal Company, was handed a sample of the contracts and deeds and was asked as to whether all the contracts and deeds were of similar import and terms. It was not necessary to read the eight hundred deeds and contracts to get before the court their contents and the aggregate number of water rights sold, it was permissible saving of time for the witness to state the general result of his examination of these

contracts and deeds, copies of which were before the court in the books of the companies. Oral evidence thus received of the contents of these instruments is assigned as error. Elliott's General Practice, vol. 1, § 404, in discussing exceptions to the rule forbidding secondary evidence says: "Where * * * documents are very vóluminous and all that is essential is a summary or calculation, a qualified witness may make it and give parol evidence thereof."

"When it is necessary to prove the results of voluminous facts, or of the examination of many books and papers and the examination cannot conveniently be made in court, the results may be proved by the person who made the examination."—*Burton v. Driggs,* 20 Wallace 125; *Myer v. Sefton et al.,* 2 Starky 274; Greenleaf, 14 ed., § 563, h.

Further, the copies of the deeds and contracts were there before plaintiffs in error with full opopportunity to examine and discover any error in the statement made by the witness and test the correctness of his statement upon cross-examination. —*Culver, administratrix, v. Marks,* 122 Ind. 554.

The Arkansas River Land, Reservoir and Canal Company and The La Junta and Lamar Canal Company had issued about eight hundred water deeds and contracts. Witness Kreybill testified to his having examined the records in the office of the respective recorders of Otero, Bent and Prowers counties to ascertain the number of such instruments of record and the number of cubic feet of water conveyed thereby. The purpose of his examination was to show that a large part of these contracts and deeds were at the time of the execution of the trust deed of record in the several counties. He was then asked to state the number of these water deeds and water contracts of record in the counties. His answer dis-

closed deeds and contracts calling for the delivery of 1,010 cubic feet of water per second of time. Error is assigned in permitting this question. To have proven the recording of each of the eight hundred instruments by the production and examination in open court of the eight hundred certified copies would have consumed much time, it could not conveniently have been done. The rule requiring the best evidence is not inflexible, it yields in certain instances when the best evidence can not be adduced without inconvenience. Where the evidence desired is the result of voluminous facts, or of the inspection of many books and papers, which cannot conveniently take place in court, or inscriptions upon monuments, secondary evidence is admissible, and are examples of the relaxation of the general rule.— Greenleaf, vol. 1, § 563, h, and authorities cited *supra*.

Further, its admission worked no prejudice; it was introduced for the purpose of showing that the bank in taking its trust deed did so with notice of the outstanding water contracts and deeds. With such notice it is charged other than by recording of all of such contracts and deeds.

"Knowledge of such facts as ought to put a prudent man upon inquiry as to the title charges a subsequent purchaser with notice of all facts pertaining thereto which diligent inquiry and investigation would have led him."—*Jerome v. Carbonate Bank of Colorado,* 22 Colo. 37.

In applying this doctrine and charging a purchaser of an irrigating canal with notice of certain easements previously granted in the canal the supreme court in *Grand Valley Irrigation Company v. Lesher,* 28 Colo. 273, 65 Pac. 44, says:

"Added to the notice just given there was a physical evidence conveyed by the cultivated land,

the lateral ditches and the headgates all along the line of the ditch."

In *McClure v. Koen,* 25 Colo. 284, it was urged that the purchaser of an irrigation canal under a trust deed took the same without notice of Koen's rights in the ditch. Koen's rights had been used in irrigating certain lands. The court said:

"If we presume in the absence of any showing that the trustee acquired title without actual notice the open and notorious possession of plaintiff at the time was sufficient to put him upon inquiry and constituted constructive notice."

In this case The La Junta and Lamar Canal Company gave the trust deed in question; it was upon the entire system, running through the counties of Otero, Bent, Prowers and Kiowa. An examination of the records of all such counties was necessary to take the trust deed advisedly. Such examination would have disclosed water deeds and water contracts of record made both by the original company and The La Junta and Lamar Canal Company. The diligent inquirer would have been advised of the plan upon which both companies operated; he would have been advised that the purchaser of water rights, under certain conditions, was to become the owner of the canal, and of its adjunct reservoirs. The physical evidence conveyed by 113 miles of ditch, lateral ditches and cultivated land would have suggested to the prudent man to ascertain whether the capacity of the canal had been sold. A ready and convenient means of such information was the books of The La Junta and Lamar Canal Company and of The Arkansas River Land, Reservoir and Canal Company. Thereby he would have been advised that the capacity of the system had been sold prior to April 13, 1893, and that under the conditions of the deeds and contracts measuring

the rights of the parties The La Junta and Lamar Canal Company had parted with all interest in this system and had nothing to encumber June 15, 1893. By such facts The Colorado Securities Company was put upon inquiry and charged with consequent notice that the capacity of this canal had been oversold and the grantor in this trust deed had nothing to encumber in such canal system at the date of the execution of the trust deed in question.

2.  Defendants in error and those for whom they sue as the holders of water contracts and deeds and the equitable owners of the canal and reservoirs have a direct and immediate interest in securing the relief sought by cancellation of the trust deed in question.  The trial court has found that the directors of The New La Junta and Lamar Canal Company "Have operated with The First National Bank of Denver to aid and enable it to collect said note, or to make it a charge upon the said The La Junta and Lamar Canal, its reservoirs and water rights thereto appertaining, and by means of said trust deed to cloud the title of said canal property."  There were no stockholders other than these hostile directors. Relief could be had only through action by the water right holders.  *Henry v. Travelers Ins. Co.*, 16 Colo. 186, sustains the right of defendants in error in their own behalf, and in behalf of others similary situated to institute this action; therein the court says: .

"The ditch company, being a party to the action, might ordinarily be depended upon to defend against an attempt to obtain judgment against it and against its property to the amount of $90,000.00 in excess of all just demands, and on account of claims and liens which had already been paid and discharged.  But the petition shows that the parties seeking to obtain such judgment had fraudulently obtained control of the ditch company, its officers, agents and attorneys,

so that it would neither make nor undertake to make such defense. Under such circumstances, it is plain that the petitioner, Henry, being the owner and holder of $10,000.00 of the bonds sought to be foreclosed, and also being the owner of a majority of the stock of the ditch company, and so an equitable owner of the larger part of the property which plaintiff was thus seeking to subject to false and fraudulent claims, liens and judgments, had a direct and immediate interest in the matter in litigation, and that he must be directly affected by the legal operation of the judgment sought to be obtained   *   *   * Hence   *   *   *   he was entitled to intervene.''

3. The Hess suit, *supra,* was instituted April 18, 1893, tried November 24, 1893, decree handed down therein December 21, 1893. The court therein found, ''That the capacity of the defendant's canal had been oversold,'' and decreed, ''That the defendant company, by its proper officers, execute and deliver a proper deed of conveyance of the said canal and its reservoirs.'' Appellant therein assigns error in the decree ordering transfer of the reservoirs and in its brief says: ''What right had the court below to decree that we should convey this undeveloped reservoir, the King reservoir?'' The decree of the lower court, as hereinbefore stated, was affirmed in decreeing that the reservoirs passed to the grantees under the contracts and water deeds. The present suit was instituted December 21, 1896; tried July 1, 1897, and decree rendered July 2, 1897. The evidence showing no change of conditions between April 18, 1893, and December 21, 1896, so far as the question of the King reservoir is involved, the finding of fact herein in the court below was, ''That *   *   * on or about April 4, 1891, the said company, The Arkansas River Land, Reservoir and Canal Company had sold and had outstanding and in force

a number of water rights, evidenced by water contracts and water deeds more than equal to the estimated full capacity of said ditch to furnish water, and that at the time of the execution of the note and mortgage set forth in the complaint of The La Junta and Lamar Canal Company, the capacity of the said canal to furnish water, including the reservoirs as then developed, had been oversold." There was evidence to support such finding of fact by it we are concluded. In the Hess case the court declared the law as to the same deeds and contracts and as to the same finding of fact as exists in this case and in so declaring held that under such conditions the King reservoir passed with the ditch to those holding water rights. Following the law so announced we hold here that on June 15, 1893, the King reservoir was equitably owned by the holders of water rights and that The La Junta and Lamar Canal Company had no interest therein at the date of the trust deed in question. As The La Junta and Lamar Canal Company had no interest in the La Junta and Lamar canal and its adjunct reservoirs at the time of the institution of this suit, as the appellees, and those for whom they sued were at such time the owners of such irrigation system, the judgment of the lower court was right in decreeing at their instance the cancellation of the trust deed which clouded their title to such irrigation system.

Let the judgment below be affirmed.

*Affirmed.*