[No. 3415.]

LOWREY ET AL. V. HARLOW.

1. EXECUTOR—*Authority After Discharge.* After his discharge the executor has no authority to act for the estate of the testator in any manner.

2. MORTGAGE—*Statute of Limitations.* One who, by inheritance or purchase, takes title to lands with notice of a mortgage existing thereon, and by payments upon the mortgage indebtedness and other acts, within the period of limitation, admits the existence of the mortgage lien, will not be permitted to plead the statute of limitations to a bill to foreclose the mortgage, even though at the institution of the foreclosure bill the mortgage indebtedness is barred by the statute and no personal judgment could be recovered against the one making such payments.

3. —— *Payments by Parent—Effect as to Minor Child.* As a general rule, a minor can do no act and make no admission which binds him, nor can the parent acting for him.

The mother taking by the will of her husband a three-fourths interest, undivided, in lands, makes payments of interest upon a mortgage thereof. Such payments have no effect to stay the course of the statute as to a minor child who takes the other undivided fourth of the lands by inheritance.

4. WILL—*Posthumous Child—Abatement of Legacies.* Testator leaving a widow and one child devises all his estate to his widow, not expressing any intention to disinherit an after-born child. A child is born after his decease. The posthumous child takes one-fourth of the lands whereof the testator died seized. (Mills' Stat., Sec. 4659, Rev. Stat., Sec. 7073.)

*Appeal from Boulder District Court.* HON. JAMES E. GARRIGUES, Judge.

Mr. H. N. HAWKINS, Mr. PRINCE A. HAWKINS, Messrs. DOWNER & HAWKINS, Mr. L. O. HAWKINS, for appellants.

Messrs. GIFFIN, ROWLAND & GIFFIN, for appellee.

HURLBUT, J.

September 11, 1907, appellee (plaintiff below) commenced suit to foreclose a mortgage of $3,500.00 executed by Mary T. Lowrey as executrix of the last will of Charles E. Lowrey, deceased. Appellants were made defendants. The mortgage was founded upon a note of equal amount given the same day by the executrix, payable to the order of William Connel, mortgagee.

The amended complaint as well as the undisputed facts show that Charles E. Lowrey died August 19th, 1894, leaving the lots in suit; that he left a will dated December 14th, 1892, devising all his property to his widow, Mary T. Lowrey; that letters testamentary were issued to his widow as executrix of his estate on September 6th, 1894; that upon petition duly presented the county court authorized and empowered the executrix to borrow $3,500.00 for the purpose of paying debts of the estate, and to execute a mortgage upon the lots to secure payment thereof; that the executrix borrowed the money from William Connel and executed a mortgage and note as executrix for $3,500.00, both dated December 3rd, 1894, the note payable to the order of Connel in five years, with interest at 7% per year; that on January 5th, 1895, the county court of said Boulder county, by order, approved the note and mortgage above mentioned; that on January 16th, 1902, said county court entered its decree closing said estate, and therein approved the final report of said executrix and entered her discharge as such, and at the same time adjudged said executrix to be the sole legatee under the will; that, at the time said estate was so closed, the indebtedness described in said mortgage had not been paid,

nor any part thereof; that on December 22nd, 1902, Connel assigned said note and mortgage to Charles W. Fulton, who at that time extended to said Mary T. Lowrey the time for the payment of said note and mortgage until December 22nd, 1903, and afterwards again extended the time of payment thereof until August 29th, 1904; that on February 29th, 1904, said Fulton, for value, assigned said note and mortgage to plaintiff; that at the time suit was brought said note was long past due; that twelve payments of interest upon said note were paid to said Fulton by Mary T. Lowrey during the year 1903; and in August and September, 1904, and April and May, 1905, she paid to the holder of the note interest thereon aggregating $213.00; and that said Mary Lowrey was a minor of the age of fourteen years when suit was commenced.

Separate answers were filed by defendants, admitting the execution of the note and mortgage as alleged in the complaint, and pleading among other defenses the six years statute of limitations and the statute of frauds as to special promise to answer for the debt default or miscarriage of another.

The following additional facts were shown by the record: Mary T. Lowrey, decedent's widow, and Annie Lowrey, his daughter, were living at the time he executed the will, but Mary Lowrey was born thereafter but before the death of her father. There is nothing in the will which indicated an intention to disinherit the unborn child. The testator, at the time of his death, possessed eight lots in University place in Boulder, and was constructing a residence and stable thereon. He had previously arranged with one Connel to borrow $3,500.00 to

complete the buildings, and prior to his death had received $1,000.00 of that amount from Connel.

The decree of the county court closing the estate found that all debts and claims against the estate, including cost of administration, had been paid in full, leaving no balance in the hands of the executrix.

On November 15th, 1902, Mary T. Lowrey paid the entire interest due on the note up to that date, and she afterwards made payments of interest thereon as above stated. The First National Bank of Boulder loaned Charles W. Fulton $3,500.00, and the note in suit was turned over to the bank as collateral security for the payment of that loan. This $3,500.00 was afterwards paid to the bank by plaintiff, whereupon the note was indorsed to her by said Fulton. The interest above referred to was paid by Mary T. Lowrey while the note was in the possession of the bank and also while it was in the possession of plaintiff as owner of the same. Mary T. Lowrey testified that she paid to the owners of the note all the interest shown by indorsements thereon, and that such indorsements correctly show the amounts and dates when paid.

Annie Lowrey, one of the original defendants, need not be considered on this appeal, having withdrawn or failed to prosecute her defense to the action.

The above is an epitome of the evidence and proofs as disclosed by the record.

Thirty-five assignments of error appear on the record, only two of which are relied upon and seriously discussed in the briefs by counsel, to-wit, the six years statute of limitations and the statute of

frauds above mentioned. As to the first assignment of error mentioned, appellants' position and contention are that at no time did the estate, or the executrix (as such) pay any part of the note or interest due thereon; that all the payments of interest above mentioned, upon the note, were made by Mary T. Lowrey as an individual and not in her representative capacity; that she secured the money to make these payments of interest in various ways, such as renting of rooms, appropriation of moneys paid to her daughter Mary from her separate property, etc. The decisive point of contention is that, the note and mortgage being a debt executed by Mary T. Lowrey as executrix, no payment of interest upon the note by either of them in their individual capacity would toll the statute of limitations as to them, particularly the daughter, she being a minor and not having paid through a legal guardian any part of such interest. Appellants further contend that even if their position is not wholly good as to Mary T. Lowrey, it is certainly good as to Mary Lowrey for the reason as stated that no payment of interest on the note was ever made by a legal guardian or other person authorized by law to bind her by such payment.

No question arises in this case as to the extent of authority of a representative of an estate to revive a debt of the testator already barred by the statute of limitations, nor as to the authority of such person to. toll the statute of limitations by part payment upon the testator's debt prior to the time the statute becomes operative, for the reason that the mortgage note was not the debt of the testator and strictly speaking was not the debt of the estate.

This debt was contracted in the most solemn form. The executrix filed a sworn petition showing that buildings under process of construction by the testator in his lifetime were, incomplete at the time of his death and that contractors were threatening to file mechanics liens against the property, and asked permission to borrow $3,500.00 and secure the same by mortgage upon the lots, in order to pay the debts of the estate, including the building debts. The court, after listening to testimony, entered a formal order granting the petition. It can be said without contradiction that neither the estate nor executrix (as such) paid anything on this note. Therefore it would appear that action. thereon was barred by the statute of limitations at the time this suit was commenced. On November 15th, 1902, the first money was paid on said note to the holder by Mary T. Lowrey., this payment being the entire interest due thereon at that time. We think appellants' counsel are correct in their statement that the payments of interest by Mary T. Lowrey were in her individual capacity, for it must be conceded that after her discharge as above stated her relations with the estate as executrix were entirely severed and she had no authority thereafter to act for or on behalf of the estate in any manner.

The full title to the property in suit passed by the terms of the will and operation of law to the widow, Mary T. Lowrey, and her daughter, Mary, who owned and possessed the property at the time the mortgage was given and suit commenced. On November 15th, 1902, Mary T. Lowrey executed a trust deed upon the property in question to Elbert Greenman, trustee, to secure a note of $250.00 which

she had given to S. A. Greenwood and C. I. Terwilliger, which deed *recited therein that the same was given subject to the mortgage under consideration*.

Did the payments of interest on the note by Mary T. Lowrey, the record of the executrix's mortgage, the clause in the mortgage of November 15th, 1902, reciting that it was given subject to the executrix's mortgage, and the testimony, taken together, arrest the running of the statute of limitations against foreclosure proceedings on the executrix's mortgage? In answering this question we will first discuss the effect on Mary T. Lowrey only.

Appellants' counsel vigorously contend that the case of *McGovney v. Gwillim*, 16 Colo. App., 288, is decisive of this case, and that it reasons the invalidity of the decree of the lower court. The case cited is well known to the profession. It reaches the conclusion that in Colorado a mortgage is an incident only to the debt which it secures, the debt being the principle thing, the mortgage only incident thereto; that if the debt is barred by the statute of limitations no action can be maintained to foreclose the mortgage securing it. This case has since been frequently referred to by our appellate courts. The case at bar, being also an action to foreclose a mortgage, and the note being barred by the statute of limitations, it would at first seem as though plaintiff might be precluded from maintaining this action. The supreme court in *Medina v. Phelps*, 39 Colo., 92, refers to that case, but distinguishes the two as to the record upon which the decisions were respectively rendered. The facts of the Medina-Phelps case can be briefly stated as follows: Davis,

the owner of the property, had given a trust deed upon the same to secure a note executed by him. Afterwards, by *mesne* conveyances, the title passed to Mitchell by warranty deed, therein reciting that the same was subject to the deed of trust mentioned. Afterwards Mitchell paid $1,100.00 on the principal, and interest thereon up to January 1st, 1902. After receiving the title he executed a mortgage to one Charlton for $2,000.00, which also recited that the same was subject to the said deed of trust, and thereafter executed a warranty deed for the property to Medina, but made no mention therein of the deed of trust. Both the deed of trust and mortgage were on record at the time Medina took his title. After the deed had been given to Medina by Mitchell, suit was brought by Medina to restrain Phelps, trustee in the trust deed, from advertising and selling the property therein mentioned. He secured a writ of injunction in the district court. At the trial Medina contended that the payments made by Mitchell upon the trust deed note before he sold him the property did not arrest the running of the statute of limitations against foreclosure proceedings on the trust deed as against him, and that as the note was barred foreclosure proceedings were also barred. The district court ruled against him on this point and dismissed the suit. On appeal the supreme court sustained the ruling. It was conceded at the trial that the statute of limitations had barred the trust deed note, but the trustee contended nevertheless that he had a right, under the evidence, to foreclose the trust deed notwithstanding that fact, and the supreme court sustained his position. The court, speaking through Justice Maxwell,

said: "It follows that the only question to be disposed of under the facts of this case is: Can a sale under the deed of trust be executed, although a right of action on the note secured by the deed of trust is barred by the statute of limitations? In support of a negative answer to this question, appellant relies upon *McGovney v. Gwillim*, 16 Colo. App., 284, where it was held that an action to foreclose a mortgage or deed of trust is barred by the statute of limitations when an action on the note is barred, to secure the payment of which the mortgage or deed of trust was given. The *McGovney-Gwillim* case is distinguishable from the case at bar. In that case there is nothing in the record to show an intention upon the part of any one to keep the lien of the deed of trust alive so as to make it a charge upon the property to the extent of paying the unpaid balance of the note. In the case at bar, the deed to Mitchell, appellant's grantor, and the mortgage made by Mitchell to Charlton, above referred to, were both 'subject to the deed of trust,' and were both of record, so that appellant had constructive notice that his grantor had acknowledged the validity of the deed under which he claims title. It is beyond dispute that it was the intention of Mitchell that the lien of the deed of trust was to be kept alive for the purpose of securing the payment of the unpaid balance of the note. The recital in the deed to Mitchell that it was 'subject to the deed of trust,' his payments upon the principal of the note and the interest to January 1, 1902, his securing an extension of the note and reduction of the interest and profiting by such reduction, the mortgage to Charlton, and his testimony hereinbefore set forth, clearly es-

tablish this fact. Appellant, with constructive notice of the existence and validity of the dead of trust by the record and the record of the Charlton mortgage and by the acts of his grantor, succeeds to the estate, sits in the seat of his grantor, and takes subject to the incumbrance. * * * We believe that the acts of Mitchell, appellant's grantor, constitute an admission that the land is subject to the deed of trust, and an engagement for the satisfaction of the balance of the note secured thereby out of the mortgaged premises, and operate to suspend the running of the statute of limitations against proceedings to foreclose the deed of trust, and that under the facts of the case appellant stands in no better position than Mitchell.'' In this case the court cites: *Perkins v. Adams,* 16 Colo. App. 96; *Starbird v. Cranston,* 24 Colo., 20; *Schmucker v. Sibert,* 18 Kan., 104; *Mc-Lane v. Allison,* 60 Kan., 441.

In the *McGovney-Gwillim* case *no payment was claimed to have been made upon the note at or after its maturity,* while in the *Medina-Phelps* case Mitchell *had made payments of both principal and interest upon the note secured by the trust deed* within the period of the statute of limitations before he had sold the property to Medina. It is well to notice at this point that in the *Medina* case the parties were in court, and the decree of the district court recited among other things that if the trustee should at any time proceed to sell the property under his power he should make certain allowances and deductions as between the parties concerned.

In reasoning back from this case of *Medina v. Phelps* to the one at bar, it would appear that Mary T. Lowrey stood in the position of Mitchell. Mitchell

obtained his warranty deed from the record owner, it being subject to a trust deed. Mary T. Lowrey obtained her title by the will, the property being subject to a mortgage which had been executed at her own solicitation as executrix. No personal judgment could have been rendered against Mitchell, or Medina, his grantee. No personal judgment could have been rendered against Mary T. Lowrey. The trust deed note secured by trust deed on Mitchell's property was barred by the statute of limitations at the time the suit was commenced. The mortgage note secured by mortgage on Mary T. Lowrey's property was barred by the statute of limitations at the time suit was commenced. Mitchell had made partial payments upon the trust deed note within six years of the commencement of the action concerning its foreclosure. Mary T. Lowrey had paid interest upon the mortgage note within six years prior to the commencement of the foreclosure suit. The property conveyed to Mitchell by warranty deed was subject to the said trust deed. The property vested in Mary T. Lowrey was subject to the mortgage. The mortgage from Mitchell to Charlton contained a clause that the same was given subject to the said trust deed, both of said instruments being of record. The mortgage given November 15th, 1902, by Mary T. Lowrey to Greenman, trustee, contained a clause that the same was subject to the executrix's mortgage, both of said instruments being of record. Mitchell had secured an extension of the trust deed note and thereafter paid interest thereon. Mary T. Lowrey had secured two extensions on the mortgage note and thereafter paid interest thereon. It would be

hard to find two cases involving facts so nearly similar in their main features.

We think the rule laid down in *Medina v. Phelps* is applicable in this case, and confess satisfaction at being able to so interpret it, for the reason that it comports with our views of equity and sound judicial reasoning.

We do not accord the same sweeping interpretation to the opinion in *McGovney v. Gwillim, supra,* as that given to it by appellants' counsel. That opinion was based upon the facts before the court, and we have serious doubt as to the able writer thereof meaning by the language used, that in all cases and under all circumstances an action to foreclose a mortgage or trust deed is barred by the statute of limitations when the debt secured thereby is so barred. In fact the following excerpt from the opinion seems to negative that construction, viz.: "The note matured March 28, 1890, and *no payment is claimed to have been made upon it at or after its maturity,*" etc. If the statement just quoted could be applied to the case at bar a few lines only would suffice to dispose of this appeal. We might further say that if the same statement would have been justified in the *Medina-Phelps* case the appellee would probably have met the same fate as did the appellant in the *McGovney* case. In the former case the supreme court distinguishes the two in this language: "In that case (*McGovney v. Gwillim*) *there* is nothing in the record to show an intention upon the part of any one to keep the lien of the deed of trust alive so as to make it a charge upon the property to the extent of paying the unpaid balance of the note."

Jones on Mortgages, 6th ed., sec. 1198, cites *McLane v. Allison,* 60 Kan., 441, in support of that part of the text which reads as follows: "A payment by a purchaser from the mortgagor is a binding admission that the land is subject to the mortgage and operates to suspend the running of the statute of limitations against a foreclosure of the mortgage." Our supreme court cited this case with approval in rendering their opinion in *Medina v. Phelps,* and we have not been convinced of any weakness in the rule there laid down.

It cannot be presumed that the payments of interest on the mortgage notes year after year by Mary T. Lowrey were for any other purpose than to keep alive the lien of the mortgage, and thus postpone the evil day of foreclosure, in the hope that in the fullness of time she would become able to remove the burden from the property which during all those years had provided her with an abiding place for herself and family. Certainly it cannot be successfully contended that justice would be better subserved under the facts in this case by punishing the mortgagee for his forbearance by denying him the right of foreclosure.

Much has been said in the able briefs of counsel on both sides concerning different phases of the case, which, by reason of the conclusions we have reached, it becomes unnecessary to notice. The cases of *Gibson v. Lowndes,* 28 S. C., 285; *Bolt v. Dawkins,* 16 S. C., 198; *Warren v. Hearne,* 82 Ala., 555, and some others cited by appellants' counsel, are not in point. We have read them carefully and find they all had under consideration situations that do not obtain here, the salient question discussed

and decided in those cases being: Could the heirs
devisees or legatees toll the statute of limitations
as to an ancestor's debt by making partial payments
thereon during the period of limitation? The courts
held that such payments would not have that effect.
This is undoubtedly the general rule in this coun-
try. As we read those cases none of them touched
the controversy we are here considering. The ques-
tion before us is: Can one receiving title to real
estate by inheritance or purchase, upon which a
mortgage exists at the time title is taken, and hav-
ing knowledge thereof, plead the statute of limi-
tations to a foreclosure proceeding of the mortgage,
when such one has made part payments upon the
debt within the period of limitations, although at the
time suit is commenced the mortgage debt is barred
by such statute and no personal judgment could be
obtained against the one making such payments?

Our conclusions are that Mary T. Lowrey, hav-
ing known of the existence of the executrix's mort-
gage, and having executed the mortgage of Novem-
ber 15th, 1902, containing a recital that the same
was subject to the executrix's mortgage, and having
made payments of interest on the mortgage note to
within a period of two years of the commencement
of this suit, and having testified that she paid such
interest because she believed litigation would fol-
low if she did not, evinced an intention on her part
to keep alive the lien of the mortgage for the pur-
pose of securing the unpaid balance of the note, and
that such acts constituted an admission that the
land was subject to the mortgage and an engage-
ment for the satisfaction of the balance of the note
secured thereby out of the mortgaged premises, and

operated to suspend the running of the statute of limitations against the proceedings to foreclose the mortgage, and that as to her three-fourths interest in the mortgaged premises the same should be foreclosed.

Our conclusions as above expressed make it unnecessary to consider defendant's plea of the statute of frauds, sec. 2025 Mills' Annotated Statutes, relative to a special promise to answer for the debt of another, etc.

Mary T. Lowrey made the payments of interest on the note of her own volition, and for her own benefit. She did not assume the indebtedness of the mortgage note and could not be subjected to a personal judgment therefor. Doubtless such payments by her were for the purpose of keeping the lien of the mortgage alive and postponing foreclosure proceedings.

We will next consider the situation as to the rights of the minor daughter Mary. As above stated, she was born after the will was executed. There was no expressed intention therein shown to disinherit any unborn child. Sec. 4659, Mills' Annotated Statutes, reads as follows: "If, after making a last will, a child or children shall be born to any testator or testatrix, and no provision be made in such will for such child or children, the will shall not, on that account, be revoked; but unless it shall appear by such will that it was the intention of such testator or testatrix to disinherit such child or children, the devise and legacies by such will granted and given shall be abated in equal proportions, to raise a portion for such child or children, equal to that which such child or children would have been

entitled to receive out of the estate of such testator or testatrix, if he or she had died intestate.'' It is clear that under this statute the property devised to the widow under the will must be abated to the extent of a one-fourth interest therein, that being the interest which the minor would have inherited had her father died intestate.

There is no question that the minor never paid any part of the interest shown to have been paid on the mortgage note. Nor was any such payment ever made for her by any one lawfully authorized to do so. It is true the evidence shows that the mother, Mary T. Lowrey, paid some of the interest on the note out of the separate funds or estate of such minor, but the same was not sanctioned by law and could not bind her or her estate. We are at a loss to discover upon what theory the payments on the note by the mother can be said to estop the minor from pleading the statute of limitations to the foreclosure proceedings. Under certain exceptions (not existing here) the minor had no power whatever to make a contract that would be binding upon her, however solemn the proceedings might be attending the transaction. Probably no one but a legal guardian formally appointed by a competent court could do that. In all civilized countries the law exercises a constant vigilance over the property rights of minors. Civilization would be a failure if the property of children under the age of discretion were not so guarded. Adults frequently experience trouble in evading loss of property by being overreached through the cunning of men who take advantage of their lack of experience and judgment. What chance then has a mere child to have

its property rights conserved during its minority, unless the power of the government, through its judiciary, assumes this duty? It is clear that this minor had the care and attention of a devoted mother, who at all times did what she deemed best for the child's interest, and although the payments made by her from the child's funds were made in the utmost good faith, they were not binding on the child or her estate.

None of the cases cited by counsel in any of the briefs deal with a situation similar to the one existing here, and we have been unable to discover any. The whole theory of the ruling in *Medina v. Phelps, McLane v. Allison,* and other like authority, is based upon the fact that in cases of this kind those who succeed to the mortgagor's title have voluntarily done some act or made some admission concerning the secured debt which estops them from invoking the statute of limitations against a proceeding to foreclose the security, even though the secured debt be barred by the statute. How can it be said that a minor can do any act or make any admission under such a situation that in law would be binding upon it, or prevent such minor from disaffirming the same when it arrives at lawful age? Appellee in all probability could have avoided the condition in which he finds himself had he taken the precaution to secure a legal guardian and an order from a competent court authorizing payment of interest on the mortgage note from the minor's personal funds.

We realize that the conclusions we have reached may work a hardship on appellee. This court would not feel grieved if it could see its way to affirm the

decree as it stands. We are constrained to hold that the able jurist who decreed the interest of the minor Mary to be sold to satisfy the mortgage note, erred in that respect.

The judgment will be reversed with instructions to modify the decree by excluding from sale the one-fourth interest in the property belonging to the minor Mary Lowrey.

Judgment reversed with instructions.